**DEATH PENALTY CASE**

IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA

RICHARD EUGENE GLOSSIP, )
)
Appellant, )
) Case No. D-2005-310
vs. )
) RECEIVED FILED
) IN COURT OF CRIMINAL APPEALS
THE STATE OF OKLAHOMA, ) MAY 30 2007 STATE OF OKLAHOMA
)
Appellee. ) Attorney General MAY 30 2007

PETITION FOR REHEARING AND          MICHAEL S. RICHIE
MOTION TO STAY THE MANDATE                CLERK

Appellant Richard Eugene Glossip was tried by jury, convicted of Murder in the First Degree, and sentenced to death in Case No. CF-97-244 in the District Court of Oklahoma County. On appeal, this Court reversed and remanded the case for a new trial. *Glossip v. State*, 2001 OK CR 21, 29 P.3d 597. On retrial, Mr. Glossip was again convicted by a jury of Murder in the First Degree. At sentencing, the trial court struck the heinous, atrocious or cruel aggravating circumstance and the jury rejected the continuing threat circumstance. However, the jury found the murder was committed for remuneration and again sentenced Mr. Glossip to death. Appellate briefs were duly filed and oral argument was held. On April 13, 2007, this Court rendered an Opinion affirming the convictions and sentences of death. *Glossip v. State*, 2007 OK CR 12, ___ P.3d ___, (Okl. Cr. April 13, 2007). In accordance with Rules 3.14, 3.15, and 9.1, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (Supp. 2006), Appellant petitions this Court to stay the mandate and grant rehearing because questions decisive of the case and duly submitted were overlooked and issues duly presented to the Court were disposed of in a way that is contrary to controlling authority.

Initially, appellate counsel asks the Court to correct the statement of facts set forth in the opinion. Early in the recitation of facts, the Court states, "Sneed admitted killing Mr. Van Treese because Glossip offered him money to do it." *Glossip* at ¶7.

1

While Mr. Glossip disagrees with this statement, he understands the Court is free to come to that conclusion based on the testimony of Justin Sneed. However, several paragraphs later, the Court states, "Glossip wanted Sneed to kill Van Treese and he promised him $10,000 for killing Van Treese." *Glossip* at ¶11. The $10,000 amount is repeated again later in the opinion. *Glossip* at ¶43. At Mr. Glossip's 1998 trial, Sneed testified, under oath, that Glossip offered him $7,000 to kill Mr. Van Treese. (1998 Tr. VI 93) In 2004, Sneed testified, again under oath, that Glossip offered him $10,000 to kill Mr. Van Treese. (Tr. XII 80) Sneed's explanation for the increase was that the offer "just kept climbing every time we started talking about it." (Tr. XII 167) This excuse would only make sense if the offer was increasing *prior to the murder*. An increase in the amount to be paid that occurs between the 1998 trial and the 2004 trial is simply a lie. Sneed's perjury should not be given the imprimatur of historical "fact" by inclusion in this Court's opinion.[1] For this reason, Mr. Glossip requests that all references to the specific figure of $10,000 be stricken from the opinion.

## INSUFFICIENCY OF THE EVIDENCE AND INADEQUATE CORROBORATION OF ACCOMPLICE TESTIMONY

In Proposition I, Mr. Glossip argued the State presented insufficient evidence to support a guilty verdict for first degree malice murder based, in part, on the assertion the State failed to corroborate the testimony of Justin Sneed. Mr. Glossip respectfully submits the Court overlooked certain questions and decided the issue in a manner that is contrary to established constitutional principles and conflicts with the Court's prior decisions.

As the Court notes, to be adequate, "corroborative evidence must tend in some degree to connect the defendant to the commission of the offense charged *without the aid of the accomplice's testimony*. Even slight evidence is sufficient for corroboration,

---

[1] Sneed also used the $7,000 figure in his statement to police on January 14, 1997. (Rule 3.11 Application, Ex. 1 and 1A.) However, this statement was not made under oath.

2

but it *must do more than raise a suspicion of guilt.*" *Glossip*, ¶ 41 (emphasis added, citation omitted) The Court then ignores these proscriptions when analyzing the evidence presented in Mr. Glossip's case.

In holding Sneed's testimony was adequately corroborated, the Court discussed the following evidence: (1) the State's "compelling" case that Sneed was dependent on Glossip, (2) the discovery of money in Glossip's possession, (3) Glossip's motive to commit the crime, (4) Glossip's concealment of the crime, and (5) Glossip's intended flight. *Glossip*, ¶¶ 43-44.

In the first place, nothing about Sneed's reliance on Glossip independently connects Glossip to this crime or raises more than a mere suspicion of guilt. Moreover, as the Court notes, "[t]he State concedes that motive alone is not sufficient to corroborate an accomplice's testimony." *Glossip*, ¶47. The Court then finds that "evidence of motive may be considered with other evidence to connect the accused with the crime" and holds that "Glossip's motive, along with evidence that he actively concealed Mr. Van Treese's body from discovery, as well as his plans to 'move on,' connect him with the commission of the crime." *Id.* This finding is clearly contrary to this Court's own precedents.

In *Cummings v. State*, 1998 OK CR 45, ¶ 21, 968 P.2d 821, 830, this Court specifically held evidence that a defendant attempted to conceal a murder after the fact is *not* adequate to independently connect him to the commission of it.[2] Similarly, this Court has long held that evidence that a defendant merely departed from the scene of a crime is insufficient to raise an inference of guilt. *See, e.g., Compton v. State,*

---

[2] The Court's reliance on *People v. Avila*, 133 P.3d 1076, 1127 (Cal. 2006) on this point is not only contrary to Oklahoma law, it is contrary to the holding in *Avila* itself. In that case, the court found the defendant's attempt "to conceal from the police his involvement in the *activities culminating in the murders* implied consciousness of guilt constituting corroborating evidence." *Id.* (emphasis added). In *Smith v. State*, 263 S.E.2d 910, 911-12 (Ga. 1980), also cited by this Court, the defendant failed a polygraph examination (which was admitted into evidence by stipulation) and concocted a demonstrably false alibi for the date of the homicide in order to conceal his participation in it. In contrast, the most that can be said regarding Mr. Glossip's actions is that he attempted to conceal the murder Sneed committed *after the fact.*

3

122 P.2d 819, 821 (Okl.Cr. 1942).[3] Clearly, neither Glossip's motive nor his concealment of the victim's body nor his plan to "move on" from the motel tended to *independently* connect Mr. Glossip to the murder of Barry Van Treese as required by Oklahoma law. Zero times zero times zero is still zero.

With respect to the money in Glossip's possession, the Court has overlooked his argument that if he had indeed received $2,000 from the money Sneed stole from Barry Van Treese, why, one day later, did he only have $1,200 for which he supposedly could not account? (Appellant's Reply Brief at 4-5) In fact, Glossip did account for this money. By stipulation, he testified that he often took cash advances against his paycheck to trick his girlfriend so he could save money, presumably to buy her the expensive items he had promised. (Appellant's Reply Brief at 5) More importantly, there is nothing about the money in Glossip's possession that connects it to the money Sneed stole from the victim. There was no testimony comparing the denominations of the bills collected by Mr. Van Treese (and stolen by Sneed) with the the bills in Glossip's possession as in *State v. Miller*, 396 N.W.2d 903, 904-5 (Minn.App. 1986), a case cited by Appellee in its response brief and discussed in Glossip's reply. (Appellant's Reply Brief at 3) The State never requested that Glossip's money be tested to see if Mr. Van Treese's fingerprints could be found on any of the bills. (Tr. XIV 78) While there was evidence the money in Sneed's possession might have had blood on it, there was none on the money in Glossip's possession. (Tr. XIV 79-80) Simply stated, there was no evidence presented at trial to connect the money in Mr.

---

[3] Despite this Court's statement in the "Facts" section of the opinion that Glossip "told people he was leaving town," the evidence shows that after being questioned and released by police the night of the murder, Mr. Glossip openly began selling his belongings and told one person that he was going to "move on." (Tr. XI 199-200) Glossip's decision to "move on" was clearly reasonable considering the fact he was the prime suspect in the murder of the owner of the motel that was his residence. Moreover, after selling his belongings and gathering his savings, Glossip took the money he scraped together and *went to see a lawyer* rather than leaving the State. (Tr. XV 16-18; State's Ex. 2) Not even the State argued at trial that this was evidence of flight.

Glossip's possession with that stolen from the victim and, thus, to independently connect him to the murder of Barry Van Treese.

As the Court notes at ¶40, n.5 of the opinion, Mr. Glossip's jury was given OUJI-CR (2d) 9-32 (2000 Supp.), the uniform instruction on corroboration that was in effect at the time of his trial. However, after Glossip's trial was over, the Court held this instruction did not accurately state the law in Oklahoma because it told the jury it "may" eliminate the accomplice testimony and then examine the remaining testimony. As the Court recognized in *Pink v. State*, 2004 OK CR 37, ¶21-23, 104 P.3d 584, 592-93, jurors do not have an option—they *"must* be able to eliminate the testimony of an accomplice . . . and still be able to find some separate evidence that tends to connect the defendant with the commission of the charged offense." (Emphasis in original.) In *Pink*, this Court modified the uniform jury instruction to accurately reflect Oklahoma law. 2004 OK CR 37, ¶23, 104 P.3d at 593.

Contrary to this Court's assertion that Mr. Glossip did not raise any issue regarding this instruction, appellate counsel asserted at oral argument the incorrect language of the instruction may be one reason the jury found corroboration where none existed. Counsel also submitted this language from *Pink* in his Supplemental Authorities. Thus, while Mr. Glossip did not assert a separate claim that his jury was misinstructed, he nevertheless raised the issue that the improper language with which his jury was instructed may have affected the jury's finding of guilt despite the paucity of evidence independent of the statements of the admitted killer.[4]

In any event, even if Mr. Glossip's jury had been given an instruction that accurately stated Oklahoma law, the reality is that it is extremely difficult for a jury to resist considering the testimony of an accomplice when trying to determine whether

---

[4] In fact, Glossip could not have asserted such a claim since the Court's decision in *Pink* was prospective only. *Pink*, ¶23. Nevertheless, the corrective measures taken by the Court in *Pink*, and the fact Glossip's jury was given an instruction that did not correctly state the law on this subject, should inform this Court's decision in this case.

a defendant is connected to the crime. As the Supreme Court said in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), even a "properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." 443 U.S. at 317, 99 S.Ct. at 2788.

The natural human tendency to consider accomplice testimony, even when instructed not to, is one of the basic reasons our system of justice depends so much on judicial review. Mr. Glossip asks this Court to preserve the rule of Oklahoma law, and the fundamental protections of due process and the right to a fair trial under the United States Constitution, and reverse his conviction.

## IMPROPER USE OF DEMONSTRATIVE AIDS AT TRIAL

Mr. Glossip argued in Proposition III that the trial court committed reversible error by permitting the State to display to the jury throughout the trial posters on which the prosecutor had written favorite bits of testimony. The Court acknowledges Glossip's claim that "the posters (1) placed undue influence on selected testimony, (2) were the equivalent of continuous closing argument, and (3) violated the rule of sequestration." *Glossip*, ¶65. The Court also acknowledges two of the cases cited in the Brief of Appellant and Supplemental Authorities, *Lanning v. Brown*, 377 S.W.2d 590, 594 (Ky. 1964) and *Miller v. Mullin*, 354 F.3d 1288, 1295 (10th Cir. 2004). However, rather than address these claims, or even distinguish the cases cited, the Court simply rejects the proposition summarily in one sentence stating, "[i]n viewing the entire record, we cannot say that the posters affected the outcome of this trial." *Glossip*, ¶75 Mr. Glossip will not repeat the arguments contained in his Brief of Appellant, pp. 42-49, and his Reply Brief, pp. 7-10. He simply asks this Court to address them.

In paragraph 71 of the opinion, the Court finds "[t]he record is not clear whether these pads stayed up during the entire trial." In the next paragraph, the Court states, "Glossip claims that the posters were 'taped up to various places in the courtroom and remained in full view of the jury and all subsequent witnesses throughout the trial'"

6

and concludes by opining "Glossip's citations to the record do not support this specific factual claim." *Glossip*, ¶72. In fact, Glossip's citations to the record clearly support what he has claimed or, at worst, present a strong "circumstantial" case that this is exactly what happened.

At the close of the second day of testimony at the trial, counsel objected "to the *posting* of demonstrative exhibits that are basically an accumulation of notes written by the prosecutors *to remain throughout the course of the variety of witnesses*." (Appellant's Brief, 42-43, citing Tr. V 195-96)(emphasis added). Kenneth Van Treese testified, "[Glossip] told me *the same thing that these notes up here are about*." (Appellant's Brief at 47, citing Tr. XI 127)(emphasis added). Immediately after all the first stage evidence had been presented, trial counsel noted his earlier objections "to what has been labeled as demonstrative exhibits, which are basically the sheets of paper that have certain writings on them and *have been taped to various places in the courtroom*." (Appellant's Brief, 43, citing Tr. XV 34)(emphasis added). This factual claim is clearly supported with specific citations to the record.

In addition, counsel specifically asked to photograph the posters individually to show what information each contained as well as the courtroom as a whole to show how the posters appeared to the witnesses and the jury so that this Court could properly evaluate this claim on appeal. (Appellant's Brief, 47, citing Tr. XV 34-45) Counsel's express reason for the request was so that this Court would have an adequate record in order to "have an idea of what our concern was." *Id.* Appellate counsel submits that this Court cannot possibly find "[a]ny error in the utilization of these posters is harmless," *Glossip*, ¶75, without such a record from the trial court or, at the very least, an evidentiary hearing at which the actual posters can be viewed (and recorded) and the hearing court can determine (and again record), to the extent possible, how the posters appeared to the jury.

As to Glossip's admission that he has found no Oklahoma cases on point on this issue, that is still the case. Indeed, as the *Lanning* court noted, and this Court repeated, there is "a dearth of precedent on this point." *Glossip*, ¶73. Mr. Glossip asserts this is so because the idea of plastering the courtroom with posters containing snippets of testimony from ordinary witnesses violates such a fundamental precept of courtroom etiquette, and is so foreign to the concepts of due process and a fair trial, that no counsel (except, apparently, the prosecutor in this case) would even attempt such a stunt much less a trial judge allow it.

Appellate counsel has found some cases that address the point at least to some degree. Although these are primarily personal injury cases, from other jurisdictions, counsel believes they may be instructive regarding the limitations other courts have placed on such demonstrative aids. *See, e.g., Kindler v. Edwards*, 130 N.E. 2d 491, 492-93 (Ind. App. 1955) (No error in use of blackboard to list damages *during argument only* when court directed plaintiff to turn the blackboard from the jury after she was through with argument and while defendant was making argument); *Four-County Electric Power Asso. v. Clardy*, 73 So.2d 144, 151-52, (Miss. 1954) (chart listing damages used in opening statement and argument to the jury is permissible, with limitations. "It is not proper for a chart of this sort . . . to remain in the courtroom where the jury can see it during the trial and testimony of witnesses. . . . And when counsel has finished his statement or argument, it should be either removed or turned away from the jury's vision, so that opposing counsel may then present his points fairly and without visual interference from the chart."); *Haycock v. Christie*, 249 F.2d 501, 502 (D.C. Cir. 1957) ("Ordinarily the permission or refusal of the use of a blackboard *during counsel's argument* is a matter within the sound discretion of the trial court. Of course, where use is allowed, *such use should be permitted only in a way to insure fairness*. Here the trial court permitted erasure of the figures after appellee's argument. It is conceivable, of course, that *an abuse would be committed if the figures*

8

*were allowed to stand in view of the jury during all arguments and during judge's charge."* (emphasis added)).

The posters "taped up to various places" throughout Mr. Glossip's trial, which represented the prosecutor's personal notes on what she believed was most important to make her case, were clearly intended to *persuade* the jury or else there was no reason to make them in the first place. This was not a complicated securities case with thousands of pages of documents the jury would understand better if they were summarized in a chart or graph. Nor was it a drug conspiracy or medicaid fraud with complicated connections between witnesses and perpetrators that a chart would assist the jury in sorting out the parties. This was a straightforward murder case. The only reason for the posters to be left up throughout the trial was to make sure the jury saw them everyday—to persuade them that the prosecutor's interpretation of the evidence was the correct interpretation.

A murder trial is not a kindergarten class. This Court simply cannot allow this "trial by poster" in any criminal case and, most particularly, a capital trial. The manner in which the posters were used in this case violated due process and denied Mr. Glossip a fair trial as guaranteed by the United States Constitution.

## PROSECUTORIAL MISCONDUCT

In Proposition IV, Mr. Glossip argued that prosecutorial misconduct occurred in both stages of his trial and that misconduct resulted in a trial so infected "with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Although Mr. Glossip disagrees with the Court's conclusions on this proposition in general, one aspect of the Court's opinion not only completely overlooks the argument presented in Mr. Glossip's briefs, it is entirely outside the record in this case.

In Paragraphs 82-83, the Court dealt with Glossip's claim the prosecutor committed misconduct by arguing that the absence of Glossip's fingerprints in room 102 amounted to evidence of guilt, stating:

> Here the prosecutor was merely arguing that, as manager of the motel and as a person who was responsible for repairs in every room, it was very suspicious that none of his fingerprints were found in the room. This was a fair inference from the evidence. The prosecutor was not arguing that Glossip selectively removed fingerprints after the crime, but was arguing that the absence of his fingerprints in the room, even ones that might have been left there under innocent circumstances was unusual. There is no plain error here.

This finding might be unassailable if not for the fact that the technical investigators and fingerprint examiners had not testified that *they did not dust the room generally for fingerprints*. Instead, the collected and examined only those prints thought to have *evidentiary significance* to the crime, *i.e.*, the fingerprints in blood. (*See, e.g.*, Tr. X, 145-48, 187-213). The prosecutor himself solicited most of this testimony and clearly knew that the argument was false. (*See* Brief of Appellant, pp. 50-51; Reply Brief, pp. 10-11) The prosecutors distorted the testimony, misled the jury and, in the end, stood the evidence on its head to bolster its very weak case against Mr. Glossip. For these reasons, this Court should grant rehearing.

## CONCLUSION

Upon the foregoing, Richard Eugene Glossip asks this Court to stay the mandate in this case and grant rehearing for the reasons stated above and to reverse and remand his conviction.

Respectfully submitted,

RICHARD EUGENE GLOSSIP,

By: _____
JANET CHESLEY
Oklahoma Bar Association No. 1645
Appellate Defense Counsel
Capital Direct Appeals Division
Oklahoma Indigent Defense System
P.O. Box 926
Norman, Oklahoma 73070
(405) 801-2666

ATTORNEY FOR APPELLANT

### CERTIFICATE OF SERVICE

I certify that on the 3rd day of May, 2007 a true and correct copy of the above and foregoing Petition for Rehearing and Motion to Stay the Mandate was delivered to the Clerk of this Court with instructions to deliver said copy to the Office of the Attorney General of the State of Oklahoma.

_____
JANET CHESLEY