**Affidavit of Connie Smothermon**

STATE OF OKLAHOMA )

COUNTY OF CELEVELAND )

Affiant, being duly sworn upon oath states as follows:

1. My name is Connie Smothermon. During May and June, 2004, I was an Assistant District Attorney for the Oklahoma County District Attorney's Office.
2. Assistant District Attorney Gary Ackley and I were the prosecutors assigned to the retrial of Richard Glossip.
3. During the course of the trial, attorneys for both the State and the Defendant utilized white sheets of paper from an easel board and magic markers to create demonstrative aids of witness statements.
4. The demonstrative aids used by the State and Defense were on identical pieces of paper and the same marker was used.
5. The jury was able to see all the demonstrative aids of the State and the Defense at the time they were created. At no time, however, were all of the demonstrative aids on display for the jury at the same time. When a poster created during witness testimony was full of writing, it was removed from the easel board. I recall these posters, for the most part, being taped to the edge of the State's counsel table facing the jury. This side of the table did not face the witness stand. Several of these posters ended up being taped over one another because of space limitations on that side of the table. Some of the State's posters may also have been taped to the back side of a large rolling chalk or marker board that was in Judge Gray's courtroom. The writing on these particular posters would not have been visible to anyone in the courtroom but the jury would have seen Mr. Ackley or myself putting them there. I would point out that the defense demonstrative aids were taped to the front of the large rolling chalk or marker board. When not in use, the easel board itself was positioned so the sheets were out of the view of testifying witnesses.
6. The State's demonstrative aids were not visible by any other witnesses other than the witness testifying at the time the demonstrative aid was being made.
7. Some of the demonstrative aids contain notes from more than one witness. That portion of the papers pertaining to other witnesses was covered so that the testifying witness could only see the portion of the paper created during their testimony. The only reason there are two witnesses on one piece of paper is for paper conservation. No witness saw the statements of another witness. All State demonstrative aids were out of sight of the witnesses.



8. At least one of the Defense demonstrative aids, depicting a denial by Sneed that he killed the victim, was visual to other witnesses and to the jury over three days of trial.
9. Only the demonstrative aids identified below as being used in closing were used during that portion of the trial by the State. No other demonstrative aid was visible to the jury during that time.
10. No demonstrative aid was introduced into evidence or sent back to the jury room with the jurors.
11. The State's demonstrative aids were only used at the following times with the following witnesses:

#1    Written at Top: "Richard Glossip (Intent)"

      Used only in the State's opening statement and closing argument.

#2    Written at Top: "Going to get fired" with up arrow along the left side

      Used only in the State's closing argument.

#3    Written at Top: "Glossip's Statements To: Officer Tim Brown after 7 pm Jan 7" and "I'm not sure when I last saw Barry because I was tired"

      Created during the Direct Examination of Tim Brown. Additional notes taken during Officer Brown's testimony are on posters #4 and #5.

#4    Written at Top: "Glossip's Statements To: Tim Brown after body found" and "Glossip and D-Anna thought all along Justin had something to do with Mr. Van Treese being missing but didn't want to say until he was sure"

      Written about half way down page: "To Cliff Everhart" and "He had seen Barry on the 6th and he went to Tulsa."

> The top portion was created during the direct examination of Officer Tim Brown. Additional notes made during Officer Brown's testimony are on posters #3 and #5
>
> The bottom portion was created during the direct examination of Cliff Everhart. While Mr. Everhart was on the stand, the top portion of the paper was covered so that Mr. Everhart could not see the notes written with Officer Brown. Mr. Everhart could only see the notes written during his testimony.

#5     Two posters taped together

> Written at Top of First Poster: "Glossip's Statements To: Officer Tim Brown, Jan 7 4:30 pm" and "Seen Mr. Van Treese 7am that morning walking through parking lot -- normal for him to walk around when there"
>
> Written at Top of Second Poster – "Richard Glossip's Statements To: Mrs. VanTreese"
>
> The two posters were created separately. They were taped together for the purpose of cross-examination of the defendant, which never took place because he did not testify. They have been kept taped together because that is how they last appeared. They were not taped together during witness testimony.
>
> The first poster was created during the direct examination testimony of Officer Tim Brown.
>
> The top of the second poster was created during the direct examination testimony of Donna Van Treese.
>
> The bottom of the second poster, starting with "D-Anna Wood" and "Justin said 2 drunks broke a window & I told him to clean it up" was created during the direct examination testimony of D'Anna Wood. While Ms. Wood was on the stand, the top portion of the paper was covered so that Ms. Wood could not see the notes written with Mrs. Van Treese. Ms. Wood could only see the notes written during her testimony.

#6     Written at Top: "Glossip's Statements To: Jackie Willams" and "When the owner comes -- stay in your room"

Written about halfway down page: "To Kayla Pursley" and "There was a fight between 2 drunks and they had thrown a footstool through the window."

>The top statements were written during the direct examination of Jackie Williams.
>
>The bottom half of the poster was created during the direct examination of Kayla Pursley. While Ms. Pursley was on the stand, the top portion of the paper was covered so that Ms. Pursley could not see the notes written with Mrs. Williams. Ms. Pursley could only see the notes written during her testimony. Additional notes taken during Ms. Pursley's testimony are recorded on #7.

#7     Written at top: "Glossip's Statements To: Kayla Pursley Jan 7th +/- 8:30 am " and "They needed to get the stuff to fix the window"

>Written about two thirds down the page: "To Michael Pursley" and "Knew window had been broken."
>
>The top portion was written during the direct examination of Kayla Pursley. These are in addition to the notes taken on poster #6.
>
>The bottom portion was created during the direct examination of Michael Pursley. While Mr. Pursley was on the stand, the top portion of the paper was covered so the Mr. Pursley could not see the notes written with Ms. Pursley. Mr. Pursley could only see the notes written during his testimony.

#8     Written at the Top: "Glossip's Statements To: John Beavers 7th 9-10 am" and "Barry rented the room & it was his problem"

Written about a third of the way down the page: "To Billye Hooper" and "Expressed pleasure Barry was finally off property"

>The top statements were written during the direct examination of John Beavers.
>
>The bottom two-thirds of the poster was created during the direct examination of Bylle Hooper. While Ms. Hooper was on the stand, the top portion of the paper was covered so the Ms. Hooper could not see the notes written with Mr. Beavers. Ms. Hooper could only see the notes

written during her testimony. Additional notes taken during Ms. Hooper's testimony are recorded on poster #9.

#9    Written at Top: "Glossip's Statements "To: Billye Hooper Jan 7th +/- 8:45 am" and "Barry left about an hour ago to go get breakfast and some materials to start on room"

Written during the direct testimony of Billye Hooper. Additional notes taken during Ms. Hooper's testimony are on poster #8.

#10   Written at the Top: "Glossip's Statements To William Bender Jan 8th between 8:00 a.m. + 10:30 a.m." and "Police had questioned him all night = they thought he had done it"

Created during the direct examination of William Bender.

#11   Written at Top: "Richard Glossip's Statements to Justin Sneed"

Created during the direct examination of Justin Sneed.

Further not sayeth affiant.

*Connie Smothermon* (signature)
Connie Smothermon

Signed and sworn in my presence.

*Bobbie Foster* (signature)
Notary Public

Commission expires: SEP. 06. 2011

AUG. 24. 2010
Date